CITY OF DENVER v. BURNETT.

1. APPELLATE PRACTICE—BILL OF EXCEPTIONS.

Judgment against a city in an action to recover pay as a policeman for a year reversed because the bill of exceptions, which purported to contain all of the evidence, failed to show any proof which might possibly show the compensation to which the plaintiff may have been entitled, that the prerequisites of appointment had been complied with, or action taken by the board which might establish a contract between the city and the plaintiff.

2. MEASURE OF DAMAGES—BURDEN OF PROOF.

The measure of damages for the breach of a contract of employment is, generally, the agreed wages for the term. Proof of the contract, the agreed compensation and the breach, makes out a *prima facie* case. It is then incumbent upon the defendant to mitigate the damages, if he can, by showing that the plaintiff has secured employment elsewhere, or that he might have done so by the exercise of reasonable diligence.

*Appeal from the District Court of Arapahoe County.*

Mr. F. A. WILLIAMS and Mr. G. Q. RICHMOND, for appellant.

Mr. C. L. DICKERSON and Mr. ADDISON A. HOPKINS, for appellee.

BISSELL, J., delivered the opinion of the court.

We entertain such grave doubts about the right of the plaintiff to recover that we do not hesitate to reverse the case chiefly because the record does not exhibit sufficient evidence to support it.    Burnett brought suit against the city of Denver to recover pay as a policeman for the period between the 8th of May, 1894, and the 8th of May, 1895, in the sum of $930, which he alleged was the compensation payable to a policeman at that time.    The construction of the answer is such as to amount to an admission that the plaintiff would have been entitled to such wages had he been employed by the city and performed services during that period.    The circumstances of the appointment are very peculiar.    The plaintiff gave evidence tending to show that in the month of May, 1894, he made application to the fire and police board of the city of Denver for employment as a policeman, and that his application was pending before the board on the 7th of May.    He offered evidence tending to show his engagement as an officer.    To establish this part of his case, he testified that after his application had been presented he was informed by one of the members of the board that he had been appointed, and was instructed by that member to take the oath of office which is prescribed by the ordinance and statute, which he did, and to report for duty.    Acting under this instruction, he took the oath before a judge of a court of record, and thereafter presented himself at the police office in the city hall, was given a key and a star, and detailed for a special duty that afternoon.    Very shortly after he entered on his work, he was informed by some one, apparently in authority, that there was a mistake respecting his appointment; and he was called on to surrender his key and star, and thereafter performed no service as an officer.    This evidence did not establish an employment or an appointment, and two members of the fire and police board as it was constituted in 1894 were produced as witnesses to give evidence concerning it.    The city promptly objected to parol testi-

mony respecting the matter; insisted that appointments were matters of record of the police board, and that the record was the sole and conclusive evidence of them. The plaintiff recognized the obligation to produce the ordinances relating to the payment of policemen to show the amount to which he would have been entitled had he worked, and which he was entitled to recover as damages for the alleged breach of contract, and the city agreed that the city ordinances as well as the record should be admitted in evidence. This is the only embarrassing feature of the case, because one of the principal points on which the case is to be reversed is the absence of any proof in the record which might possibly show the compensation to be as he claimed it, the prerequisites of the appointment to have been complied with, and due action taken by the board which might possibly establish a contract between the city and the plaintiff. We are unable, however, to discover in the bill of exceptions any preservation of this testimony which the plaintiff was bound to offer, and did attempt to produce. If the bill of exceptions did not purport to contain all of the evidence, and did not so recite, we might indulge in the presumption that there was enough competent testimony to support the judgment, and therefore accept the finding as conclusive. The plaintiff accepted the bill of exceptions as prepared. It was signed by the judge, and contains nothing on this subject. Neither the ordinance nor any of the ordinances are produced, nor is the record, or any part of it, contained in the bill of exceptions, although there is a *quasi* recital by the clerk of what possibly were the contents of the record respecting the same. We cannot, however, find any copy of any resolution offered by any member of the board, or acted on by the board as a whole, any vote taken, nor anything else to indicate that the board, as such, took such action as would result in the appointment of Burnett to the position. When the book, which we may assume was probably the record of the acts of the fire and police board, was produced by the clerk, it appeared that the name "Burnett" was on the list of men who were

acted on by the board on that date; but the initials were
E. J., and not M. M., which latter were the initials of the
plaintiff.  It would appear from the testimony that there
was some erasure on the book, and the initials originally
there had been scratched out, and others inserted.  We are
left very much in the dark as to the circumstances under
which this erasure was made.  The court held that, since
the record showed evidences of erasure, it could not be taken
as conclusive; and he admitted the testimony of the two
members respecting the circumstances under which it was
done, which tended to prove that the board intended to ap-
point M. M. Burnett, and not E. J.  We do not quite agree
with the theory which the trial court adopted with reference
to this record, as we are able to gather it from the bill of
exceptions.  It does not necessarily follow, because there
was an erasure, that the record is not the only legitimate evi-
dence of the appointment of a policeman.  The record may
not import the absolute verity which it would had it re-
mained unaltered, and it may possibly have been the subject
both of attack and of explanation, but we are quite unable
to see how this fact renders the testimony of the two mem-
bers of the board either satisfactory or conclusive respecting
the board's action in making the appointment.  One of the
members testified that the man he voted on was M. M., but
that when the record came to be made up, which seems to
have been on the same day, some other member remarked
that it was a mistake, and the initials were changed and the
name corrected.  The board then, as an entirety, approved
the proceedings, and accepted the record as amended; so
that there is no evidence to show that the record as it
stands does not exhibit the action which the board took
with reference to the appointment of a Burnett on the po-
lice force.  The members who testified, as well as the one
who was absent, assented to the correctness of the record,
concurred in the change, and the record stands as show-
ing the appointment of E. J. Burnett, and not of the plain-
tiff, M. M.  In the absence of any countervailing proof, this

record would clearly demonstrate that the plaintiff had never been appointed, and, barring an appointment, his action must fall. The evidence which the members offered was not exact to show that in point of fact the vote was taken on M. M. Burnett, and not on E. J., and that this was the action of the board, which ought to control over the record. We do not intend to be understood as deciding that if the record, in its present shape, be absolutely contradicted by the members, and it is by their testimony established the vote was on M. M., but it was incorrectly entered on the book, this might not be sufficient to make out a case for the plaintiff. Our embarrassment in this particular comes from the fact that we are unadvised as to what the ordinance may be, or what the regulation is, which provides for the appointment of policemen, nor what action the fire and police board must take in order to make a valid appointment. These matters are not before us. Doubtless there is an ordinance on the subject, and possibly the action of the board, in the absence of a record, would be enough for the purpose. Since we are quite of the conviction the record is in other respects defective, we are not at liberty to assume the regularity of the plaintiff's appointment, to the extent of making the city liable on the contract. If the plaintiff desired to make a case other than that which would be made by the production of the record itself, he was bound to show a vote or resolution of appointment. There was no proof of a vote, the adoption of a resolution, or any action by the board which would show a contract between the parties. The case is not supplemented by the proof which the plaintiff gave of the statement made to him by a member of the board that he had been appointed. A verbal notification by one member of the board, where the power of appointment rests in a board, cannot be enough to establish a contract whereon the plaintiff may recover.

The case is defective in other particulars. We are unable to see that there is any admission in the answer that the appointment, if made, would be for a year, whereby the

plaintiff, if employed, would have a right of action on a contract, and a right of action, in case of a breach, for his wages for the time. There is no proof of a resolution ordering an appointment for that time, nor anything in the proven statement of one of the members that the appointment was for a year. Manifestly, to entitle the plaintiff to recover a year's wages he must show a contract for that time, or the rendition of services. We are quite aware of the general rule which prevails in actions on contracts to employ for a definite period. The rule was definitely stated in *Saxonia Mining & Reduction Co. v. Cook*, 7 Colo. 569. Where a contract is once established, the party is entitled to recover damages, and the general measure is the agreed wages for the term. Proof of the contract, the agreed compensation, and the breach makes out a *prima facie* case; and it is incumbent on the defendant to mitigate those damages, if he may, by showing that the plaintiff has secured labor elsewhere, or might have done so by being reasonably diligent in that matter. While this obligation rests on the defendant, the city made no effort in that direction, perhaps relying solely on the lack of evidence of the appointment. It is so exceedingly probable that the plaintiff did not remain idle for an entire year, and was not entitled to recover a full year's wages by reason of the breach alleged, that these defects in the plaintiff's proof are given greater prominence than perhaps might ordinarily be the policy of an appellate court, and they are given all the weight to which they could be entitled.

We are not at all clear the plaintiff could recover without proof of a demand of performance. There is no evidence in the case showing a discharge by any one in authority, or having the right to relieve the plaintiff if he had been properly employed; nor do we discover any evidence that the plaintiff afterwards tendered his services to the proper authorities, and offered to perform the duties during the time which elapsed between the alleged discharge and the expiration of the year. The record contains no evidence to show that he offered his services, or attempted to carry out his

contract, or at the end of the year made demand upon the proper authorities for his compensation. There was some evidence offered by the plaintiff that he sent a bill to the succeeding board, but what the bill was, what it covered, its form, or whether there was any demand other than a bill, or any offer of service by the plaintiff, is left undisclosed. These matters are suggested, rather than stated as a basis of the decision, because on the subsequent trial the difficulties which the court has found in ascertaining the rights of the parties from the evidence has led us to suggest what the plaintiff ought to do, so that, if he obtains judgment, there will be a basis on which it can be affirmed.

This case does not come at all within the rule we have often declared, that we will not interfere with the judgment of a trial court because the evidence is insufficient to support the verdict or judgment. That rule is always applied in cases where there is a conflict in the testimony, and where there is enough in the record to justify the court in finding for the plaintiff. Where there is sufficient proof made by the plaintiff to warrant his recovery, accepting it in its entirety, and whatever conclusions the trial court has a right to draw therefrom, we do not, except in rare cases, disturb the judgment. Wherever, however, on the whole case as made, the plaintiff is not entitled to recover, this general rule is no obstacle to a reversal. The plaintiff not having made out a case which entitled him to judgment, what was entered will be reversed, and the case sent back for a new trial.

*Reversed.*